In the Matter of the Estate of ANNIE KANANACK, Deceased.

Surrogate's Court, Kings County, April 5, 1935.

*Giden & Giden,* for the administratrix, Sarah Kushner.

*Slade & Slade,* for Meyer Kananack.

*Edward A. Kole,* for the Prospect Coal Company.

WINGATE, S. The sole questions at issue on this motion for reargument are as to whether it is possible to attack collaterally a decree, duly entered in a proceeding to which the present applicant was a party, and whether the provisions of section 79 of the Surrogate's Court Act mean what they apparently say.

Annie Kananack died on March 30, 1932. Letters of administration on her estate were issued to Meyer Kananack, her husband, on April nineteenth following. By order dated October 4, 1932, these letters were revoked, he was enjoined from further action, and directed to file and proceed to settle his account within twenty days. By the same order, the present respondent, Sarah Kushner, was appointed administratrix in the place of the removed administrator upon her filing a bond in the sum of $10,250, with which condition she promptly complied.

The decree settling the accounts of the deposed administrator was not signed until April 5, 1934. His account enumerated among the assets which had come into his hands the following items of property which were asserted to have the values indicated: 200 shares Albert Pick Barth & Co., no value; 100 shares American Rayon Company, no value; 10 shares Industrial Realty, value unascertainable; claim for fifty-five per cent of a deposit for $1,350 in the Bank of United States; one diamond pin, about $300; one diamond bracelet, about $400; one diamond studded watch, $250. Although the substituted administratrix was a party to this accounting, no objections were interposed by her to these allegations of the account.

The decree on the accounting, notice of settlement of which was duly admitted by the attorneys for the substituted administratrix, contains, *inter alia,* the decision of the court, reading in part as follows:

" (9) The claim of the Prospect Coal Co., Inc., is allowed in the sum of $182.50, together with disbursements and interest.

" (10) The reasonable value of the legal services rendered to this estate by Slade & Slade, Esqs., is fixed and determined in the sum of $475 and disbursements. A payment in the sum of $125 having been received by them prior thereto, appropriate provision may be made in the decree to be entered herein for the payment to them of the sum of $350. Disbursements in the sum of $27.11 are also allowed."

The summary statement of the decree contains the following: " The Administrator is charged and credited with the following property which was received by him and has been turned over in kind to Sarah Kushner, present Administratrix; " then follows an enumeration of the 310 shares of stock, the claim against the Bank of United States and the diamond pin, bracelet and watch, hereinbefore noted.

The pertinent parts of the following decree read:

" Ordered, adjudged and decreed, that said Sarah Kushner, the present Administratrix, out of the property of the estate now in her hands, pay to Messrs. Slade & Slade, attorneys for the estate and said administrator, the sum of $350.00 balance found due them for legal services rendered by them to the estate, together with the sum of $27.11 for disbursements, making in all the sum of $377.11, and it is further

" Ordered, adjudged and decreed, that out of the property of the estate now in the hands of Sarah Kushner, present Administratrix, she pay unto Meyer Kananack, the sum of $40.75, now due him, and it is further

" Ordered, adjudged and decreed, that Sarah Kushner, the present Administratrix, out of the property of the estate now in her hands, pay to Prospect Coal Co., Inc., the sum of $182.50, together with disbursements of $10.00 and interest thereon of $13.70, amounting in all to $206.20."

The only additional decretal clauses were the usual formal ones respecting the judicial settlement of the accounts of the deposed administrator and his discharge from all responsibility " as to the matters embraced in said account."

It is, of course, well established that every item and allegation of an account tenders a potential issue which is joined only when an objection is expressly interposed thereto (*Matter of Melzak*, 153 Misc. 600, 604, 605), and that, upon an absence of objection, the various items and allegations of the account are established, *pro confesso*, against each party failing to object. (*Matter of Ayvazian*, 153 Misc. 467, 476.)

The application of these principles to the case at bar demonstrates that the issues of the receipt by the deposed administrator

of the three items of jewelry and of their possession of an approximate value of $950 were tendered, and were established by the admission of all parties, including the present successor administratrix. She received these specific articles, and in addition she received in specie from her predecessor the claim against the Bank of United States, on which she has admittedly received dividends aggregating $202.62. She is, therefore, by reason of her admissions and the application of the principle of *res adjudicata*, shown to have received a total of $1,152.62, from which she was expressly directed in the decree to pay the three specified sums aggregating $624.05.

She has failed to comply with these decretal directions, and the disappointed parties have applied for her punishment in contempt by reason of such failure. No part of the sum of $377.11 due Messrs. Slade & Slade, or the $206.20 due the Prospect Coal Company, has been paid.

The sole defense interposed is that the respondent did not in fact have the moneys to make the payment, since, it is claimed, she sold the jewelry which she received to her sister for $450 shortly prior to the entry of the decree. If this sale actually took place, it is somewhat remarkable that the fact was not developed until the judgment creditors became vociferous in their demands that she effectuate their adjudicated rights in the *rem* of which her joinder in the decree admitted possession and against which determination she interposed no objection.

In *Rudd* v. *Cornell* (171 N. Y. 114) the court, in defining the limits of the doctrine of *res adjudicata*, says (at p. 128) that " a judgment is conclusive upon the parties only in respect to the grounds covered by it and *the facts necessary to uphold it*." (Italics not in original.) The primary bases on which all of the decretal directions in the case at bar are based are, first, that the specified sums of money were owing to the indicated individuals and that the fiduciary had applicable funds or property of the estate in her hands sufficient for the solution of these obligations. Both were essential to the determinations and directions then made. If either was erroneous, it was capable of correction by appeal, but failing this, they became *res adjudicata* for all purposes and, therefore, could not be made the subject of future traverse or controversy.

It is precisely this situation which section 79 of the Surrogate's Court Act codified. It is there provided that " a decree directing payment by an executor, administrator, guardian or testamentary trustee, to a creditor of, or person interested in, the estate or fund, * * * is, except upon an appeal therefrom, conclusive evidence

that there are sufficient assets in his hands to satisfy the sum which the decree directs him to pay."

The decree here in question was one directing payment by an " administrator * * * to a creditor," and is, therefore, within the direct language of the enactment. The respondent seeks to differentiate a decree such as this from one upon an accounting made by herself. No authority for any such distinction is cited, and no reason for any differentiation is advanced. The term " decree " is defined in section 78 of the act and there is no reason to suppose that the Legislature used the word in any different sense in section 79 than in any of its multitudinous other employments.

Whereas the respondent is at some pains in her effort to distinguish *Matter of Strong* (111 App. Div. 281, 284) from the case at bar, she totally ignores the consonant determination in *Matter of Scheuer* (161 App. Div. 525, 527), which is also cited in *Matter of Garrity* (149 Misc. 180, 181). Unquestionably, as demonstrated in *Baucus* v. *Stover* (89 N. Y. 1, 4), a somewhat more lenient rule is adopted where the sole asset shown is a debt due the estate from the fiduciary in his individual capacity. This, however, does not aid the present respondent since she, with her own acquiescence, was charged with the possession of certain specific property, the uncontested value of which was almost double the amount she was directed to pay.

Unquestionably, too, a different principle prevails in connection with accountings by a fiduciary of a deceased fiduciary where there is no demonstration that specific assets have come into his hands, but this is for the reason that he is under no obligation to assume control of any assets of the underlying estate and, unless he has actually done so, cannot be held accountable for them. (*Matter of Hayden*, 204 N. Y. 330, 338; *Matter of Hurley*, 149 Misc. 68, 71; Dec. Est. Law, § 121.) A demonstration of fact in this respect is, therefore, prerequisite in such a case to any determination of liability whatsoever. Where, however, such a fiduciary has actually assumed control, he is liable for the avails which he has received in precisely the same manner and to the same extent as any ordinary fiduciary. (*Matter of Morrell*, 154 Misc. 356, 358; *Matter of Hurley*, 149 id. 68, 71; *Matter of Read*, 141 id. 716, 718.)

The court has no complaint with the determination in *Matter of Monell* (28 Misc. 308, 309) that " Where, on the face of the decree itself, as well as from examination of the proceedings on which it is based, it appears that there were not in the hands of the administratrix any moneys or assets with which to make the

payment," the " conclusive presumption " of the statute does not apply. The case is, however, in no wise presently in point. Here, on the face of the decree itself, it appeared that there *were* assets in the hands of the administratrix for the purpose, and from an examination of the proceedings on which the decree was based, and the admissions of the administratrix herself, they possessed a value almost double that of the total of the payments directed to be made. This question of value is *res adjudicata*, wherefore there is an end of the matter. The decree was made, the time to appeal has expired and the court has no power to vacate or modify its terms on any such showing as has here been made. (*Matter of Dunne*, 138 Misc. 840, 844; *Matter of Surpless*, 143 id. 48, 58; *Matter of Seitz*, 149 id. 526, 529.)

It may not directly vacate or modify it, and may, therefore, not do by the indirection of a refusal to enforce that which it has no authority to do directly. (*Schmohl* v. *Phillips*, 138 App. Div. 279, 280; *Matter of Garrity*, 149 Misc. 180, 181.)

The relief which the present applicant seeks is merely an additional civil remedy made available by the Legislature in certain cases. It would seem, therefore, that the court has no discretion to refuse its aid in any case where, as here, the statutory prerequisites are demonstrated. (*Matter of Wax*, 149 Misc. 851, 854.) While the court doubts its possession of any discretion in such a case, the facts of the case at bar are in any event not such as to incline it to exercise any discretion which it might possess. The respondent has totally ignored the express directions of the court for a full year and has not so much as attempted to pay a single dollar on account of these long overdue obligations, while admittedly having received estate cash in the interval.

The motion for reargument is accordingly granted, but on such reargument the court adheres to its former determination.

Proceed accordingly.