In the Matter of Clara Y. Hildreth et al., as Executors of Ada B. Storm, Deceased. United States Trust Company of New York, as Substituted Trustee, Respondent; Samuel L. Siegel, Appellant.

First Department, November 28, 1967.

*Harris L. Present* for appellant.
*Robert P. Weil* for respondent.

EAGER, J. This is an appeal from an order, entered July 11, 1967, adjudging the respondent, an attorney, in contempt by reason of his failure to comply with a prior order of the court directing the return by him of certain trust funds improperly paid to him as counsel fees by a former (now removed) trustee. The order directed the payment of the balance of the sums remaining unpaid, with interest, and provided that upon proof of respondent's noncompliance with the order within 60 days, an ex parte application for his commitment would be entertained.

The proceeding was instituted by affidavit and order to show cause pursuant to section 757 of the Judiciary Law. The respondent submitted an affidavit in opposition to the application and contended that his failure to comply with the directions for payment was not willful or contemptuous. He alleged that he was in ill health and financially unable to make further payments as directed. (He had paid a certain sum on account by depositing the same in escrow pending an appeal from a prior order.) Special Term, however, flatly held that " the question of the respondent's ability to comply with the court's mandate may not be considered at this stage of the proceedings."

The parties present on this appeal and argue on the merits the question of whether, on the application to punish for contempt, the court should consider the respondent's alleged inability to pay. The petitioner trustee contends that the court was bound to direct respondent's commitment on failure of compliance with the prior order; that respondent's alleged inability

to pay as directed was not a proper factor for consideration; and that respondent should be relegated to the remedy prescribed by section 775 of the Judiciary Law for release from imprisonment following his commitment. (See *Schmohl* v. *Phillips,* 138 App. Div. 279.)

Although the papers submitted by the respondent lack a satisfactory showing of his good faith and his inability to pay, a majority of us believe that he should not be committed without being given the opportunity to make a factual showing in support of his claims. In any event, we unanimously conclude that we should reach and set at rest the controversy frequently arising with respect to the present-day effect of *Schmohl* v. *Phillips* (*supra*).

The power is expressly conferred upon a court of record to punish a person for a civil contempt of court where he refuses or willfully neglects to pay money directed to be paid by him by a judgment or order which "(1) requires the payment of money into court or to an officer of, or receiver appointed by, the court, except where the money is due upon the express or implied contract or as damages for the non-performance of a contract; or (2) requires a trustee or a person acting in a fiduciary relationship to pay a sum of money for a willful default or dereliction of his duty." (CPLR 5105. See, also, CPLR 5104; Judiciary Law, § 753.) It is well settled, however, that the power so conferred upon the court is discretionary and is to be exercised in the light of the facts and circumstances in each particular case. The petitioner establishing a refusal to pay the sum of money directed to be paid is not generally entitled as a matter of law to an order committing the respondent for contempt. (*Nelson* v. *Hirsch,* 264 N. Y. 316, 318; *Gluck & Co.* v. *Tankel,* 12 A D 2d 339; *Victor* v. *Turetz,* 266 App. Div. 311, 313. See, also, *National Sur. Corp.* v. *Silver,* 23 A D 2d 398, 403, revd. on other grounds 17 N Y 2d 477.) Although the court has power to grant an order of contempt in the cases specified, it is not legally bound to do so. (*Nelson* v. *Hirsch, supra,* p. 318.)

Applications to punish as a civil contempt the noncompliance with court directives are generally addressed to the sound discretion of the court. (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 5105.01, 5105.05, 5105.07; *Gluck & Co.* v. *Tankel, supra; Thompson* v. *Thompson,* 197 App. Div. 228.) Of course, if it appears that the inability of the respondent to pay or perform was occasioned by his flagrant or wrongful act (see *People ex rel. McGoldrick* v. *Douglas,* 286 App. Div. 807; *Grant* v. *Greene Cons. Copper Co.,* 125 App. Div. 833, 835), or it appears that there has been a willful and contemptuous refusal to pay

over a specific and particular existing fund in the respondent's possession (see *Victor* v *Turetz, supra,* p. 313), there is little room for the exercise of discretion. Generally, however, upon an application for a contempt adjudication, the court should exercise its judicial discretion broadly to accomplish justice on the basis of all facts and circumstances bearing upon the nature and willfulness of the respondent's conduct.

Furthermore, a contempt adjudication generally requires the exercise of the court's discretion in determining the nature and extent of the punishment to be imposed, in determining whether or not the respondent should have an opportunity to purge himself of the contempt and in fixing the conditions relative thereto. '' There is a large degree of discretion lodged in the court in the matter of punishing for a civil contempt, and as to conditions on which contempt may be purged. This discretion may be exercised both as to inflicting or refusing to inflict punishment, and in case of a determination to impose punishment, as to imposing a fine or committing to imprisonment, or both. And within the limitations prescribed by statute, the court may exercise discretion as to the amount of the fine or the length of the imprisonment.'' (21 Carmody-Wait, New York Practice, § 157, p. 310.)

Where there is a proper and factually supported showing on behalf of respondent of his good faith in his endeavors to comply with a court mandate and of his inability to comply therewith, the court should not abdicate its discretionary responsibilities upon the ground that the respondent, after imprisonment, may have a remedy under section 775 of the Judiciary Law. The existence of a postimprisonment remedy certainly does not authorize a jailing which, at its inception, would be contrary to the interests of justice.

We are aware, of course, that the 1910 decision of this department in *Schmohl* v. *Phillips* (138 App. Div. 279, *supra*) is frequently cited as supporting a general holding that a motion to be discharged from imprisonment, as authorized by said section 775 of the Judiciary Law, constitutes the exclusive remedy of a respondent for his alleged inability to endure imprisonment or to comply with a court directive. This decision has been said to have established a general rule whereby it is '' obligatory upon the court to imprison a respondent in spite of a demonstration of pertinent circumstances which would require it to issue an order for release upon an application made immediately after the incarceration.'' (See legislative note to bill amending section 84 of Surrogate's Court Act [L. 1936, ch. 338] as referred to in *Matter of Lent,* 159 Misc.

411, 412–413.) The rule has, however, been frequently and justly criticized. It has been labeled as a "practically anomalous and burdensome rule * * * honored more in the breach than in observance." (*Matter of Lent, supra*, p. 412.) Pointing to the legislative change rendering the rule inapplicable in Surrogate's Court matters (see Surrogate's Ct. Act, § 84), and with a view toward simplification of practice, it has been held at Special Term that the rule should no longer be considered binding on determination of Supreme Court contempt applications. (*Matter of Chassman* [*Probyn*] [McGivern, J.], 1 Misc 2d 766. See, also, *Harris Investing Corp. v. Sil-Gold Corp.*, 38 Misc 2d 549, 552.)

There is no reasonable justification for a rule which requires a commitment for civil contempt under circumstances which would authorize the immediate release of the respondent by reason of his inability to comply with the court mandate or to endure imprisonment. (See 21 Carmody-Wait, *supra*, § 111, p. 262; *Doran v. Dempsey*, 1 Bradf. 490, 493, 494; *Cochran v. Ingersoll*, 13 Hun 368, 370, app. dsmd. 73 N. Y. 613.) Such a rule, fashioned on basis of *Schmohl* (*supra*), "imposes needless hardship upon an unfortunate person, and involves a useless expense and waste of the time of the court". (See legislative note cited in *Matter of Lent, supra*, p. 413.) The rule is decidedly at variance with the policy which favors the elimination of unnecessary motion and procedural steps wherever possible without prejudice to the substantial rights of the parties. In the interests of practice simplification and of the proper administration of justice, the rule should not stand. Consequently, we conclude that *Schmohl v. Phillips* (*supra*) should not be followed insofar as it may be an authority for limiting the proper exercise of the discretionary powers of a court in determining an application for a civil contempt adjudication.

It is well to note, however, that where a party alleges an excuse for disobedience to a judgment or order of a court or alleges matters in mitigation, the burden of proof is upon him to establish the same. Such burden must be met by a factual showing. Vague and conclusory allegations of sickness or inability to pay or perform are not acceptable. (See 21 Carmody-Wait, *supra*, § 123, p. 273; *Clark v. Bininger*, 75 N. Y. 344; *Matter of Dalsace*, 26 Misc. 873.)

Where a respondent presents a proper showing of facts which are relevant and material in connection with a court's determination of a contempt application, the petitioner should be given an opportunity to reply thereto. (See *Ryckman v. Ryckman*, 34 Hun 235, 238, affd. 98 N. Y. 639.) Then, if it appears that

there is a bona fide dispute in material and relevant facts, the court may set the matter down for a hearing. (See *National Sur. Corp.* v. *Silver, supra*; *Crisona* v. *Eastern Props. Improvement Corp.*, 27 A D 2d 717; *Matter of McDonnell* v. *Frawley*, 23 A D 2d 729; *Moyer* v. *Feldman*, 30 N. Y. S. 2d 899.)

In the special circumstances of the present case, the order entered July 11, 1967, should be reversed and vacated, on the law, on the facts and in the exercise of discretion, with costs and disbursements to petitioner, and the matter remanded to Special Term, SARAFITE, J., presiding, with leave to respondent-appellant within 20 days after entry of order hereon to present to such Special Term affidavits or other proofs establishing his alleged good faith in his efforts to comply with the prior order and his alleged inability to make payment of the balance of the moneys as directed. Thereupon or on default of submission of such affidavits or proofs, Special Term shall proceed in the manner it deems proper and advisable in light of this opinion.

BOTEIN, P. J., CAPOZZOLI, RABIN and McGIVERN, JJ., concur.

Order entered on July 11, 1967, unanimously reversed and vacated, on the law, on the facts and in the exercise of discretion, with $30 costs and disbursements to petitioner-respondent, and the matter remanded to Special Term, SARAFITE, J., presiding, with leave to respondent-appellant, within 20 days after the entry of the order herein, to present to such Special Term affidavits or other proofs establishing his alleged good faith in his efforts to comply with the prior order and his alleged inability to make payment of the balance of the moneys as directed. Thereupon or on default of submission of such affidavits or proofs, Special Term shall proceed in the manner it deems proper and advisable in the light of the opinion of this court filed herein.